UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**

AUG - 4 2011

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

THE HUMANE SOCIETY OF THE UNITED STATES
2100 L Street NW
Washington, D.C. 20037

PLAINTIFF

v.

REBECCA BLANK, in her official capacity as
Acting Secretary of Commerce,
1401 Constitution Ave. N.W.
Washington, D.C. 20230;

ERIC C. SCHWAAB, in his official capacity as
Assistant Administrator for the
National Marine Fisheries Service
1315 East West Highway
Silver Spring, MD 20910; and

NATIONAL MARINE FISHERIES SERVICE
1315 East West Highway
Silver Spring, MD 20910;

DEFENDANTS

Case: 1:11-cv-01407
Assigned To : Roberts, Richard W.
Assign. Date : 8/4/2011
Description: Admn. Agency Review

Complaint for Declaratory and
Injunctive Relief

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.  This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 501 *et
    seq.*, challenging Defendants' denial of The Humane Society of the United States'
    ("HSUS'") petition to list Porbeagle sharks (*Lamna nasus*) as a "prohibited shark
    species" in implementing regulations for the Magnuson-Stevens Fishery Conservation
    and Management Act ("MSA"). 16 U.S.C. §§ 1801 *et seq.*; 50 C.F.R. § 635.34(c); *id.* at
    Part 635 App. A, Table 1(d). On February 10, 2011, NMFS sent a letter to HSUS denying
    the MSA petition, finding that although HSUS sufficiently demonstrated the requisite
    criteria for listing, "prohibiting porbeagle sharks is not warranted at this time."

Defendants' denial of HSUS' petition is arbitrary and capricious, and an abuse of discretion.

## JURISDICTION

2. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1346 (United States as a defendant), and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

3. Defendants have not remedied the violations of law; thus, there exists an actual controversy between the parties within the meaning of the Declaratory Judgment Act. 28 U.S.C. § 2201.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e) because the Defendants are located in this district and a substantial part of the events or omissions giving rise to the claim occurred here.

## PARTIES

5. Plaintiff THE HUMANE SOCIETY OF THE UNITED STATES ("HSUS") is a non-profit animal protection organization, headquartered in Washington, D.C., with over eleven million members and constituents nationwide. Since its establishment in 1954, The HSUS has worked to combat animal abuse and exploitation and promote animal welfare. To this end, The HSUS actively strives to improve the management of marine and estuarine resources throughout the Atlantic coastal states, the common range of the Northwest Atlantic population of Porbeagle sharks. Further, The HSUS has specifically worked to promote the conservation of Porbeagle sharks by advocating to reduce or eliminate

overfishing of vulnerable shark species and stocks, and to end inhumane and exploitative recreational shark fishing tournaments, in which Porbeagle sharks are a common target. If landing and retention of Porbeagle sharks were prohibited, The HSUS would no longer need to divert its limited organizational resources to combating exploitation of, and ensuring adequate conservation measures are in place for, this species.

6. On February 16, 2010, The HSUS, on behalf of itself and its members, submitted to the National Marine Fisheries Service ("NMFS") a petition to list Porbeagle sharks as a "prohibited species" under the MSA, to prohibit the retention of any Porbeagle shark caught in United States waters.

7. As part of its continuing efforts to protect Porbeagle sharks, on January 21, 2010, The HSUS submitted a separate petition to list the Northwest Atlantic population segment of Porbeagle sharks under the Endangered Species Act, 16 U.S.C. §§ 1531 *et seq*.

8. The HSUS' members and staff rely on Porbeagle sharks for recreational, aesthetic, professional, and economic purposes. The HSUS' members regularly visit coastal areas and otherwise enjoy the ocean and its inhabitants. Our members enjoy seeing animals alive in the wild, are distressed when they view dead sharks that they believe have been unnecessarily killed for commercial or recreational purposes, and are concerned about the decline in shark numbers and their risk of extinction. The HSUS' members who regularly recreate in areas where Porbeagle sharks can be seen, and who desire to see these sharks, will not be able to do so if the species is not properly protected from threats to its survival as required by law. Further, HSUS members and staff who spend time and other resources researching and advocating for protection of sharks are adversely affected by the Secretary's failure to prohibit landing and retention of the species under the MSA.

9.  Defendant REBECCA BLANK is sued in her official capacity as the Acting Secretary of
    Commerce. The Secretary is the federal official who oversees the proper administration
    and implementation of the MSA.  The Secretary has delegated the charge of fishery
    management under the MSA to the National Marine Fisheries Service (NMFS), a
    division of the National Oceanic and Atmospheric Administration (NOAA).

10. Defendant ERIC C. SCHWAAB is sued in his official capacity as Assistant Administrator
    for NOAA Fisheries. The Assistant Administrator manages the National Marine Fisheries
    Service and is responsible for issuing regulations implementing fishery management
    plans for highly migratory species in the Atlantic, such as Porbeagle sharks, which
    includes making determinations regarding the prohibition of possession and sale of shark
    species.

11. Defendant NATIONAL MARINE FISHERIES SERVICE is an agency within NOAA of the
    Department of Commerce.  NMFS is the federal agency that issued the denial of HSUS'
    petition to list Porbeagle sharks as a prohibited species.

STATUTORY FRAMEWORK

*The Magnuson-Stevens Act and Implementing Regulations*

12. In enacting the MSA, Congress found that "Certain stocks of fish have declined to the
    point where their survival is threatened, and other stocks of fish have been so
    substantially reduced in number that they could become similarly threatened as a
    consequence of (A) increased fishing pressure, (B) the inadequacy of fishery resource
    conservation and management practices and controls . . ." 16 U.S.C. § 1801(a)(2).

13. The MSA establishes a system for conserving and managing fish populations in United States territorial waters and in the exclusive economic zone (EEZ). Pursuant to the MSA, fisheries are governed by fishery management plans (FMPs) and implementing regulations. The MSA directs NMFS to prepare an FMP for Atlantic highly migratory species (HMS), including Porbeagle sharks. 16 U.S.C. § 1854(g)(1).

14. In preparing an HMS FMP and its implementing regulations, NMFS must not only comply with ten national standards for fishery conservation and management, 16 U.S.C. § 1851(a), but also ensure that its regulations "promote international conservation of the affected fishery." 16 U.S.C. § 1854(g)(1)(G).

15. NMFS issued final regulations implementing an HMS FMP for Atlantic Tunas, Swordfish, and Sharks in 1999. 64 Fed. Reg. 29,090 (May 28, 1999); 50 C.F.R. Part 635. Included in the HMS FMP implementing regulations is a list of sharks that are separated into management categories, including "prohibited" species: 50 C.F.R. Part 635 App. A, Table 1(d).  Porbeagle sharks are currently on the Pelagic Sharks list, but not on the Prohibited Sharks list.

16. If deemed a prohibited shark species, any such species caught in federal waters or in state waters by a federally-permitted vessel would be required to be released. 50 C.F.R. §§ 635.24(a)(5); 635.27(b)(1); 635.22(c)(3); 635.4(a)(10).  Prohibited shark species must be released "in a manner that will ensure maximum probability of survival, but without removing the fish from the water," and causing the "least harm possible." *Id.* §§ 635.21(a); 635.71(d)(10).  Further, the possession, retention, or sale of prohibited shark species is prohibited. *Id.* § 635.71(d)(10).

17. NMFS regulations provide that "NMFS may add species to the prohibited shark species group . . . if . . . the species is determined to meet at least two of the criteria." 50 C.F.R. § 635.34(c).  The criteria which NMFS must consider are:

> (1) Biological information indicates that the stock warrants protection.
> (2) Information indicates that the species is rarely encountered or observed caught in HMS fisheries.
> (3) Information indicates that the species is not commonly encountered or observed caught as bycatch in fishing operations for species other than HMS.
> (4) The species is difficult to distinguish from other prohibited species.

> *Id.*

### *Administrative Procedure Act*

18. The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. "Agency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

19. In an APA suit, the reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . ." 5 U.S.C. § 706(2).

### FACTS GIVING RISE TO PLAINTIFF'S CAUSE OF ACTION

### *Porbeagle Sharks*

20. The Porbeagle shark is a wide-ranging, coastal and oceanic shark that can be found circumglobally in the Southern Hemisphere and in distinct populations in the Northeast and Northwest Atlantic.

21. Porbeagle sharks inhabit cool and temperate waters, and are an apex predator that feeds on fish, squid, and some small sharks.

22. Porbeagles are long-lived and slow-maturing – females take thirteen years to reach sexual maturity and can live up to forty-five years. Females spawn every one to two years, giving live birth to an average litter of four pups. Porbeagle sharks are particularly vulnerable to threats to their survival due to their late onset of sexual maturity and low lifetime fecundity.

23. The Northwest Atlantic population of Porbeagle sharks is found off the coast of Greenland, Canada, and the United States, including Maine, Massachusetts, Rhode Island, New York, Connecticut, New Hampshire, and New Jersey. Several studies have shown that there is no significant interchange with other populations. There is no evidence of mixing between the Northwest Atlantic population and Porbeagles in the southern hemisphere and only one recorded example of exchange between the Northwest Atlantic population and Northeast Atlantic population.

24. The Northwest Atlantic population of Porbeagles has suffered a loss of up to 90% of its virgin biomass. There have been two major declines in this population. The first began in the 1960s with the onset of large-scale commercial fisheries, and the population collapsed within six years. After a period of low catches and modest recovery, the Northwest Atlantic population collapsed again in the 1990s, when fishing efforts increased.

25. Recent stock assessments have estimated the total population size for Northwest Atlantic Porbeagles at 188,000-191,000 sharks, and studies suggest that the population over the last decade may have increased slightly, remained stable, or even further declined

(various models show the total population in 2009 at 95% to 103% of its 2001 level and the population of mature females in 2009 at 83% to 103% of its 2001 level).

26. Despite the uncertainty over current Northwest Atlantic Porbeagle population trends, there is no doubt that the historic decline has been dramatic, and that Porbeagle sharks continue to face numerous threats to their survival, including coastal pollution, ocean acidification caused by global climate change, and especially overfishing for recreational and commercial purposes.

27. NMFS itself proposed listing Porbeagle sharks as a prohibited species in 2007, explaining that Porbeagle sharks are overfished and commonly confused with another prohibited shark species, the Great White shark. 72 Fed. Reg. 41392 (July 27, 2007). NMFS ultimately chose not to list Porbeagles as prohibited, instead issuing a reduced total allowable catch (TAC) for the species.

28. Porbeagle sharks are landed by domestic and international commercial fisheries, primarily by pelagic longline methods. Landings are often under-reported, especially on the high seas, and consist primarily of juveniles. Porbeagles are also exploited for recreational purposes – some tournaments in the North Atlantic region of the United States offer prizes for the largest Porbeagle sharks caught. Recreational catches are also unaccounted for by NMFS, despite the fact that fishing guides promote the fact that Porbeagle sharks can be caught within a few miles from shore. NMFS has routinely reported zero take in recreational fisheries over the last decade at the same time that news outlets have reported record-sized Porbeagle shark landings and large prizes awarded for Porbeagle sharks caught in shark tournaments. When these sharks are caught and not released, a Porbeagle often will be dragged behind fishing boats to drown the shark.

*Petition to List the Porbeagle Shark as a Prohibited Species*

29. On February 16, 2010, HSUS petitioned the National Marine Fisheries Service under the APA (5 U.S.C. § 553(e)) to list the Porbeagle shark as a "prohibited shark species" in implementing regulations for the MSA. 50 C.F.R. § 635.34(c); *id.* at Part 635 App. A, Table 1(d).

30. The petition presented evidence that Porbeagle sharks meet all four criteria that NMFS is required to consider in listing species as prohibited, including a 90% reduction in population size in the Northwest Atlantic population in just 40 years, evidence of overfishing, information indicating the species is not commonly caught in HMS or other fisheries, and evidence that Porbeagle sharks are commonly confused with other prohibited shark species, such as the Great White shark (*Carcharodon carcharias*) and Shortfin Mako shark (*Isurus oxyrinchus*).

31. The petition further argued that current NMFS management measures are inadequate to prevent continued depletion of Porbeagle sharks. NMFS does not track all mortalities from recreational and commercial fisheries in the United States, and the total catch legally allowed by the United States and Canada is well above the limit that NMFS acknowledges as sustainable. Catch on the high seas, which is believed to be greater than the total catch by the United States and Canada combined, is largely unregulated, and there are currently no controls or monitoring systems in place to measure international trade in the species.

32. In March 2010, while HSUS' petition was pending, the United States supported a petition to list Porbeagle sharks on Appendix II of the Convention on International Trade in

Endangered Species of Wild Fauna and Flora ("CITES"), which would have implemented international trade restrictions for the species.

33. On February 10, 2011, NMFS sent a letter to HSUS denying the petition to list Porbeagle sharks as prohibited.

34. NMFS found that HSUS sufficiently demonstrated two of the four listing criteria, stating that the agency "agrees that porbeagle sharks might be rarely encountered or observed caught in HMS fisheries (criteria 2) and are not commonly encountered or observed caught as bycatch in other fishing operations (criteria 3)."

35. NMFS found that Porbeagle sharks did not meet Criteria #1 (biological evidence warranting protection), concluding that "porbeagle sharks are not currently experiencing overfishing" and "the rate of fishing mortality does not need to be reduced from the 2005 levels in order for rebuilding to occur."

36. Increased protection of Porbeagle sharks is clearly warranted – the Northwest Atlantic population has declined 90% in just 40 years, and the International Union for the Conservation of Nature ("IUCN") lists Porbeagle sharks as vulnerable across its range, and lists the Northwest Atlantic population as endangered. The IUCN also lists Porbeagle shark populations as decreasing, both overall and specifically in the Northwest Atlantic.

37. NMFS also found that Porbeagle sharks do not meet Criteria #4 (difficult to distinguish from other prohibited species), because of "differences in their teeth, dorsal fin coloration, and second dorsal fin position."

38. Although there are differences between Porbeagles and other shark species, they are nonetheless often confused with white sharks and shortfin mako sharks, both prohibited

species – indeed, recreational fishermen often refer to Porbeagles as "fakos" due to the similarity in appearance.

39. Although NMFS' regulations only require two criteria to be met for listing a shark species as prohibited, and NMFS concluded that HSUS' petition did in fact demonstrate two criteria, NMFS found that "prohibiting porbeagle sharks is not warranted at this time." The agency then states that when two or more criteria are met, "NMFS *would evaluate* the information regarding the criteria, current management measures, and available scientific information" to determine whether to prohibit a species, but NMFS provides no further evaluation or conclusions with regard to the criteria met or available scientific information about the species.

40. NMFS only explanation for its decision not to list Porbeagle sharks as prohibited was contained in a single conclusory sentence at the end of its denial letter, which states that "[t]he United States has measures in place that limit expansion of the existing porbeagle fisheries." The agency did not adequately explain how these measures address the myriad threats that Porbeagle sharks continue to face.

41. At the end of its denial letter, NMFS indicates that it may take action to protect Porbeagle sharks sometime in the future "[i]f the . . . quota is exceeded or if future assessments indicate additional protection is needed."

PLAINTIFF'S CLAIMS FOR RELIEF

*FIRST CLAIM FOR RELIEF*
*(Failure to Explain Decision)*

42. Each of the allegations set forth above are incorporated by reference herein.

43. NMFS' denial is unlawful because the agency did not provide a sufficient explanation for

its decision. After analyzing each criteria and finding that HSUS had demonstrated the requisite criteria, NMFS cursorily denied the petition, asserting that prohibited listing is not warranted at this time. The agency stated that existing measures in the United States are adequate to "limit expansion" of current fisheries without any explanation for how existing measures are adequate to protect Porbeagle sharks, or why ability to limit expansion of current fisheries is the appropriate barometer for whether a prohibited listing is warranted. Therefore, NMFS' denial is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the MSA and implementing regulations within the meaning of the APA. 5 U.S.C. § 706(2).

44. NMFS' denial also fails to explain why "criteria 2" and "criteria 3" are insufficient for listing in this case, despite the fact that NMFS' regulations state that meeting two of the criteria may be sufficient for listing.  NMFS's only explanation in this regard is that "meeting two criteria does not automatically result in prohibition" without any evaluation or conclusions specific to the criteria met or any available scientific information about the species. By dismissing the fact that The HSUS' petition demonstrated the requisite criteria for listing without any explanation for doing so, NMFS' denial is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the MSA within the meaning of the APA. 5 U.S.C. § 706(2).

*SECOND CLAIM FOR RELIEF*
*(Decision Not Supported by Record Evidence)*

45. Each of the allegations set forth above are incorporated by reference herein.

46. NMFS denial is unlawful because its decision that "criteria 1" and "criteria 4" were not met is contrary to the record evidence before the agency. The HSUS' petition presented substantial evidence that the stock warrants protection based on the species late sexual

maturity, low fecundity, importance to the ecosystem, and dramatic decline in population size. Further, the petition presented numerous examples of Porbegale sharks being confused with other prohibited shark species, such as shortfin mako sharks and great white sharks.

47. NMFS' denial is also unlawful because the only basis provided for its decision – that existing regulatory mechanisms limit expansion of current fisheries – is contrary to record evidence provided in The HSUS' petition showing that current fishing levels are unsustainable. Therefore, NMFS' denial was and is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the MSA within the meaning of the APA. 5 U.S.C. § 706(2).

48. NMFS' denial is further unlawful because the best available biological information indicates that Porbeagle sharks are in need of additional protection, and similarly situated sharks (i.e. Species of Concern pursuant to the Endangered Species Act) are included on the prohibited species list. Therefore, NMFS' denial is arbitrary, capricious, an abuse of discretion and otherwise not in accordance with the MSA within the meaning of the APA. 5 U.S.C. § 706(2).

*PRAYER FOR RELIEF*

Plaintiffs request that this Court enter judgment providing the following relief:

1. Issue a Declaratory Judgment that Defendants are in violation of the law for each and every Count as alleged herein;

2. Declare unlawful and set aside NMFS' denial of HSUS' petition to list Porbeagle sharks as a prohibited species;

3. Issue an injunction compelling NMFS to promptly conduct a full investigation into whether

Porbeagle sharks warrant listing as a prohibited species and respond to The HSUS's petition, and to fully explain any decision made on the petition, within a reasonable time after the Court's Order;

4. Award Plaintiffs their costs of litigation, including reasonable attorneys' fees as provided in the Equal Access to Justice Act and/or any other applicable law; and

5. Grant any other such relief as the Court deems just and proper.


                                        Respectfully Submitted,


August 4, 2011


                                        Ralph Henry (D.C. Bar No. 982586)
                                        Anna Frostic (D.C. Bar No. 977732)
                                        The Humane Society of the United States
                                        2100 L Street NW, Washington, D.C. 20037
                                        Phone (202) 676-2333; Fax (202) 676-2357

                                        *Attorneys for Plaintiff*